732 F.2d 116
 Dennis SANTISTEVAN, and Joseph Herrera, Plaintiffs-Appellants,
v.
Doyle I. LOVERIDGE, E.P. Heller, George Asakawa, Halcom
Holliman, Lorraine Strong, each in their
individual capacity, Defendants-Appellees.
 No. 83-1080.
 United States Court of Appeals,
Tenth Circuit.
 April 12, 1984.
 
 Sylvian R. Roybal, Denver, Colo., for plaintiffs-appellants.
 Robert N. Miller, U.S. Atty., and Stephen Klein, Asst. U.S. Atty., Denver, Colo., for defendants-appellees.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 Dennis J. Santistevan (Santistevan) and Joseph Herrera (Herrera) appeal from an order of dismissal. At all times relevant hereto, Santistevan and Herrera, Spanish-surnamed American citizens, were employees of the Federal Employment Standards Administration, Department of Labor.
 
 
 3
 Santistevan and Herrera brought this suit against their supervisors, appellees, alleging that their supervisors had conspired to interfere with the performance of their duties as federal officers in violation of 42 U.S.C.A. Secs. 1985(1), 1985(3) and 1986. Specifically, Santistevan and Herrera alleged that, inter alia: appellee Loveridge, Regional Administrator for the Employment Standards Administration, had made false and coercive accusations against them by stating that they were trying to undermine his (Loveridge's) position and authority; they were subjected to harassment and intimidation regarding the investigation of an employee under Santistevan's supervision; Santistevan was threatened by Loveridge with a transfer to Washington, D.C.; Santistevan was reassigned to a position of lower grade, nonsupervisory and nonmerit pay; Santistevan has been the victim of an investigative report in which he was referred to as a racist; when Loveridge was investigated for misuse of travel funds, he accused Herrera of "whistle blowing" and told Herrera he did not trust him and that he (Herrera) had better find another job; appellees had, in the past, ordered that Herrera's telephone calls be monitored; and Loveridge and others had conducted themselves in such a manner as to create an intimidating, hostile, and offensive working environment, the purpose and effect of which was to unreasonably interfere with Santistevan's and Herrera's work performance.
 
 
 4
 Santistevan and Herrera alleged that as a result of appellees' actions they had suffered ridicule, humiliation, hatred, severe emotional distress, impairment of their professional reputations, and legal expenses. Santistevan and Herrera each asked for damages of $200,000.00.
 
 
 5
 Appellees subsequently moved to dismiss, contending that Santistevan's and Herrera's complaint failed to state a cause of action under Secs. 1985 and 1986 because "there is absolutely no allegation of a racial or other class-based conspiracy" (R., Vol. I at 25) and that the acts complained of were discretionary supervisory acts for which they were entitled to absolute immunity.
 
 
 6
 Within its order of dismissal the district court found plaintiffs had failed to allege a racial or class-based discriminatory animus which is necessary to state a claim under Sec. 1985(3), citing Lessman v. McCormick, 591 F.2d 605 (10th Cir.1979). In addition, the court found that it was not necessary to reach the question of immunity because Sec. 1985(1) does not give plaintiffs a federal cause of action "for the type of quarreling and backbiting that is alleged in their complaint." Finally, the court found that because plaintiffs had failed to state a claim under Sec. 1985, their claim under Sec. 1986 must fall as well. (R., Vol. I at 37), citing Campbell v. Amax Coal Co., 610 F.2d 701 (10th Cir.1979).
 
 
 7
 On appeal Santistevan and Herrera do not challenge the district court's dismissal of their Sec. 1985(3) complaint. They do contend: (1) that the district court had jurisdiction under Sec. 1985(1); (2) that the appellees are not entitled to the defense of immunity; and (3) that dismissal of their Sec. 1986 claim was in error because a viable Sec. 1985(1) claim was established.
 
 
 8
 Santistevan and Herrera contend that whereas an allegation of racial or some other kind of invidious discrimination is necessary to establish a cause of action under Sec. 1985(3), such an allegation is not necessary to establish a cause of action under Sec. 1985(1), and that the district court erred in dismissing their Sec. 1985(1) claim. We disagree. Sec. 1985(1) prohibits, inter alia, two or more people from conspiring to prevent by force, intimidation, or threat, any person from holding an office under the United States or from discharging the duties thereof. A viable Sec. 1985(1) cause of action requires allegations of class-based or racial discriminatory animus. Campbell v. Amax Coal Co., supra; Atkins v. Lanning, 556 F.2d 485 (10th Cir.1977). Santistevan's and Herrera's complaint did not allege any class-based or racial discriminatory animus. The district court properly found that in the absence of such allegations, a complaint fails to state a claim under Sec. 1985(1).
 
 
 9
 We further hold that even if Santisteven's and Herrera's complaint had alleged class-based or racial discriminatory animus, it would have failed, under the facts herein, to state a claim under Sec. 1985(1). The legislative history[1] of the Ku Klux Klan Act of 1871, of which Sec. 1985(1) is a part, clearly indicates that the Act was not enacted to develop a forum within the federal courts whereby dissatisfied federal employees could resolve internal personnel problems. This 1871 enactment was intended as an enforcement vehicle for the thirteenth amendment, in that Congress intended to provide black persons equal protection of the laws of the United States and to rectify certain moral and physical inhumanities. The remedial goal was aimed at equal protection of the laws or to equal privileges and immunities under the laws. Congress has enacted other laws to protect federal employees asserting individual interests. See, e.g., 5 U.S.C. Sec. 4301 et seq. (remedies for employees who complain of unfair performance evaluations); Civil Service Reform Act of 1978, 5 U.S.C. Sec. 1101 et seq. (increasing the authority and powers of the Merit Systems Protection Board in processing hearings and appeals affecting federal employees). See also Lawrence v. Acree, 665 F.2d 1319, 1329 (D.C.Cir.1981) (J. Wald, concurring). It is our view that 42 U.S.C. Sec. 1985 was enacted to provide a remedy for deprivation of rights under color of state law and it does not apply when the defendants are acting under color of federal law.
 
 
 10
 Santistevan's and Herrera's allegation that appellees are not entitled to the defense of immunity was not reached by the district court and does not merit our consideration on appeal.
 
 
 11
 Santistevan and Herrera contend that the dismissal of their Sec. 1986 claim was in error. Sec. 1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid ... neglects or refuses to do so." Hence, there can be no valid claim under Sec. 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under Sec. 1985. Santistevan and Herrera failed to establish a viable Sec. 1985(1) cause of action. Thus, the district court properly dismissed their Sec. 1986 claim on the basis of our decision in Campbell v. Amax Coal Co., supra. See also Lessman v. McCormick, supra; Taylor v. Nichols, 558 F.2d 561 (10th Cir.1977).
 
 
 12
 AFFIRMED.
 
 McKAY, Circuit Judge, concurring:
 
 13
 The plaintiffs brought suit against their supervisors, alleging they conspired to interfere with the performance of plaintiffs' duties as federal officers, in violation of 42 U.S.C. Secs. 1985(1), 1985(3) and 1986. Their allegations contain a large inventory of harassing actions designed to drive them out of their jobs. The trial court dismissed the entire complaint, basing its conclusion on the belief that the absence of any allegation of class-based animus was fatal to the entire action. The plaintiffs do not challenge on appeal the district court's dismissal of their section 1985(3) complaint. Their challenge focuses on section 1985(1) and, if that is good, on their section 1986 claim.
 
 
 14
 Contrary to the court's opinion, I believe that the threshold question concerning a section 1985(1) claim is controlled by Kush v. Rutledge, --- U.S. ----, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Prior to the Kush case, it apparently was either widely believed or not carefully considered that Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), established that any section 1985 claim, no matter what subparagraph it arose under, required an allegation of racial or other class-based invidious discriminatory animus. Kush makes clear that the Griffin v. Breckenridge rule applies only to the last half of section 1985(2) and all of section 1985(3). The Kush court unanimously held that the legislative background and principles which supported Griffin:
 
 
 15
 [do] not apply to the portions of the statute that prohibit interference with federal officers, federal courts, or federal elections.... [Further], and of greatest importance, the statutory language that provides the textual basis for the "class-based, invidiously discriminatory animus" requirement simply does not appear in the portion of the statute that applies to this case.
 
 
 16
 Kush 103 S.Ct. at 1488 (citations omitted).
 
 
 17
 The Supreme Court was, of course, referring to actions brought under subsection (1) and the first half of subsection (2) of section 1985. That is precisely the part of the section which is at issue in this case. Our own cases are not to the contrary. Campbell v. Amax Coal Co., 610 F.2d 701 (10th Cir.1979); Taylor v. Nichols, 558 F.2d 561 (10th Cir.1977); and Atkins v. Lanning, 556 F.2d 485 (10th Cir.1977), are all cases dealing with subsection (3) of section 1985. Even though they occasionally simply refer to section 1985 without any subsection designation, it is clear that the court in each of those cases was dealing with subsection (3) allegations, not subsection (1) allegations.
 
 
 18
 In light of Kush, it is perfectly clear that an allegation of racial or class-based animus is not necessary to sustain an action under section 1985(1), even though an allegation of such animus would bring an appropriate conspiracy under that section.
 
 
 19
 However, that does not end the matter. It is still necessary to determine whether the kind of conduct alleged in this case brings the complaint within the intent and meaning of subsection (1).
 
 
 20
 As the concurring opinion in Lawrence v. Acree, 665 F.2d 1319 (D.C.Cir.1981), suggests:
 
 
 21
 The language of Sec. 1985(1) nowhere suggests that it applies to a federal employee seeking damages from his supervisors who attempt to remove him simply because they dislike him or find his on-the-job performance substandard. Section 1985 is a systemic device, designed to protect against class-based discrimination, or conspiracies seeking to impede the operations of government by interfering with an official in the discharge of his official duties. It is not concerned with a very different, but ever present problem of assuring that federal supervisors evaluate their subordinates objectively and fairly.
 
 
 22
 Lawrence v. Acree, 665 F.2d at 1328 (footnotes omitted).
 
 
 23
 An analysis of the history suggests that in addition to actions alleging conspiracies against federal employees based on racial or class-based animus, section 1985(1) was designed to protect federal officers against interference from persons outside the federal government. See Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1348 (7th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); Lawrence v. Acree, 665 F.2d at 1328. This section was not intended as a broad-gauged basis for causes of action for misconduct by supervisors within a federal agency. There is no suggestion either in the cases or in the history of the statute that that section of the statute should become a basis for the resolution of intra-agency employment disputes. Construed even in the light most favorable to the plaintiffs, this action is just that, an intra-agency employment dispute. As such, it must fail under section 1985(1). Since the action cannot survive under section 1985(1) or under section 1985(3), it must also fail under section 1986 which is derivative of those two sections.
 
 
 24
 For the foregoing reasons, I would affirm the judgment of the trial court dismissing the action below.
 
 
 
 [1]
 For a discussion of the legislative history of the Act, see Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); Morrell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)